## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael Romeo, being duly sworn, do depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as a Special Agent for approximately two and half years. I am presently assigned to Boston II Field Office, a group of Special Agents who investigate violations of laws related to firearms trafficking, possession of firearms by prohibited persons, and the use of firearms in furtherance of drug trafficking crimes, in and around the City of Boston, Massachusetts. I have conducted numerous investigations relating to violations of state and federal firearms and narcotics laws. I have received training in investigations related to firearms and narcotics trafficking at the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") located in Glynco, Georgia. In particular, I received training regarding firearms, the execution of search and arrest warrants, and other investigative techniques. Subsequently, I attended specialized training known as Special Agent Basic Training at FLETC, where I received instruction in firearms technology and identification, firearms & narcotics trafficking, alcohol & tobacco diversion, explosives, and arson. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants.

2. Based on my training and experience, I am familiar with federal firearms laws and know that it is a violation of Title 18, United States Code, Section 922(g)(1) for a person previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition which had previously traveled in interstate or foreign commerce.

3. I submit this affidavit in support of a criminal complaint charging Jason Cobb (DOB xx/xx/1980) with being a felon in possession of a firearm and ammunition, to wit: a KEL TEC, model number 360, .380 caliber handgun (the "KEL TEC firearm"), and one round of .380

caliber ammunition.

4. The facts herein are based on a review of reports written by law enforcement officers during this investigation and my conversations with them. In submitting this affidavit, I have not included every fact known to me regarding this investigation. Instead, I have included only those facts that I believe are sufficient to establish probable cause.

## Investigation

5. On January 25, 2018, at approximately 6:30 p.m., Boston Police Officers Joshua Neely and Christopher Kennedy, while on patrol in their unmarked Boston Police cruiser, observed an individual walking from the rear of 880 Cummins Highway in the Boston neighborhood of Mattapan. There are multiple "No Trespassing" signs posted on and around the 880 Cummins Highway building. The cruiser's strobe light was shined at the individual and Officer Neely immediately recognized him as Jason Cobb. Officer Neely is familiar with Cobb having interacted with him multiple times while Officer Neely worked at the Nashua Street Jail and Cobb was an inmate. They have also interacted with each other multiple times in a cordial manner since Cobb was released from custody and Officer Neely joined the Boston Police Department. Officer Neely was aware that Cobb has prior convictions for possessing a firearm and drug trafficking.

6. The officers exited their cruiser with the intent of speaking with Cobb. The officers were dressed in plain clothes with their police badges prominently displayed on their outermost garments. As the officers approached Cobb, he looked at them, immediately grabbed his right sweatshirt pocket from the outside, and took off running towards Cummins Highway. The officers were approximately 5 – 10 feet away from Cobb before he started running. Prior to Cobb running away, Officer Kennedy noticed that Cobb's right sweatshirt pocket had a significant weight to it and that he appeared to be grasping the handle of an unknown item. Officer Kennedy has attended the "Characteristics of an Armed Gunman" training multiple

times, and through his training and experience, believed that Cobb exhibited signs consistent with an individual carrying a firearm.

7. As Cobb ran away, Officer Neely immediately yelled Cobb's name, shouted they were police, and told him to stop. The two officers then chased after Cobb on foot as he ran through the intersection of Cummings Highway and Rockdale Street. During the foot chase, Officer Neely observed Cobb gripping his right sweatshirt pocket and clenching his right arm close to his chest as if he was trying to keep something from falling out of his pocket.

8. Cobb then ran into the backyard of 18 Rockdale Street, and the officers lost sight of him. Officer Neely followed Cobb's path into the backyard while Officer Kennedy went around the other side of the house. As Officer Neely searched the backyard of 18 Rockdale Street, he located Cobb laying down in the alley between 18 and 20 Rockdale Street. Cobb was sweating profusely and immediately put his hands behind his back. Officer Neely placed Cobb in restraints and then searched him for weapons. Officer Neely specifically searched Cobb's right sweatshirt pocket, which was empty, as were all of his other pockets, and there were no weapons in the area immediately around him. Cobb was then placed under arrest and transported from the scene.

9. Due to Cobb's actions after he saw the officers, the officers suspected he had discarded what he was carrying in his right sweatshirt pocket. A Police K9 (Duke) was called to the scene to search the area for any potential weapons Cobb may have discarded during the foot chase. During the search, Duke and his handler located the KEL TEC firearm in the backyard of 20 Rockdale Street, which is directly adjacent to where Cobb was found laying down. The firearm's magazine was missing, but there was one .380 caliber bullet loaded in the firearm's chamber. The KEL TEC firearm was found approximately ten to fifteen yards from where Cobb was found, resting on top of a pile of leaves, and did not appear to have dirt, rust, or ice on it. Officer Neely noted that there had been an ice storm in the area recently and objects near where

the KEL TEC firearm was found were either wet or covered in ice.

10. I have consulted with ATF Interstate Nexus Expert Special Agent Mattheu Kelsch who confirmed that neither the KEL TEC firearm nor the one round of .380 caliber ammunition were manufactured in Massachusetts. As such, the KEL TEC firearm and the one round of .380 caliber ammunition traveled in and affected interstate commerce.

11. I am familiar with Cobb's criminal history and know that on June 12, 2014, he was convicted in the Suffolk Superior Court of one count of possession of a firearm, in violation of Massachusetts General Laws Chapter 269, Section 10, and was sentenced to be imprisoned for 18 months.

## Conclusion

12. Based on the foregoing facts, there is probable cause to believe that on January 25, 2018, Jason Cobb, in Boston, within the District of Massachusetts, did possess, subsequent to a conviction of a crime punishable by imprisonment for a term exceeding one year, a firearm and ammunition which had previously been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

_____
Michael Romeo
Special Agent, ATF

Sworn and subscribed to me this 10th day of April, 2018.

_____
Honorable Robert B. Collings
United State Magistrate Judge

HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
United States District Court
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 3604
Boston, Massachusetts 02210

4