**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-cr-10176-LTS |
| | ) | |
| JASON COBB, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO PERMIT TESTIMONY DURING ITS
CASE IN CHIEF REGARDING BOSTON POLICE OFFICER JOSHUA NEELY'S AND
THE DEFENDANT JASON COBB'S PRIOR INTERACTIONS**

Now comes the United States, through counsel, the office of the United States Attorney

for the District of Massachusetts, and respectfully requests that this Court allow the government

to admit into evidence at the trial of the above matter arresting Boston Police Department

("BPD") Officer Joshua Neely's expected testimony regarding his previous interactions with the

defendant.   As indicated in the BPD's Incident report (I182006638), and as developed through

pre-trial preparation, Officer Neely knew the defendant prior to the events of January 25, 2018.

Specifically, Officer Neely first met the defendant when the defendant was serving a prison

sentence at the Suffolk County Jail on Nashua Street and Officer Neely was then a prison guard

assigned to the defendant's unit for three months, during which time Officer Neely and the

defendant had daily interaction.   Additionally, once joining the Boston Police Department,

Officer Neely encountered the defendant in Boston's Mattapan neighborhood multiple times

during his routine patrol.   Officer Neely is expected to testify that during each of these

interactions—both in prison and in Mattapan—he and the defendant greeted each other by name

and spoke in a civil and non-confrontational manner.

The defendant's previous, non-confrontational interactions with Officer Neely are highly

probative of his consciousness of guilt during the events in question.   On January 25, 2018,

Officer Neely and his partner observed the defendant exiting an alley behind 880 Cummins Highway.   In stark contrast to his behavior during prior interactions with Officer Neely, on this occasion the defendant fled.   When officers came upon the defendant behind 18 Rockdale Street less than two minutes and two blocks later, they found a firearm—free of the dirt, rust, and/or ice other nearby objects had—in the area behind 20 Rockdale Street which is adjacent to 18 Rockdale Street.

Information about the history of the defendant's interactions with the specific officer from whom he ran is necessary to allow the jury to determine whether the defendant's actions were reasonable or instead evinced a consciousness of guilt.   To combat any risk of prejudice to the defendant, the government proposes to limit Officer Neely's testimony.   Specifically, the government does not intend to elicit testimony as to the context of Officer Neely and the defendant's interactions.   Officer Neely will not be asked questions that identify that the defendant was previously incarcerated, or under what circumstances, or what subject matter his conversations with the defendant involved.   Instead, the government will limit its questions to simply the date of the interactions, the location of the Mattapan interactions, and the tone of the conversations.

Undoubtedly, the defendant will contest any mention of his and Officer Neely's prior interactions.   He will likely argue that any mention of his prior interactions with a police officer will reflect negatively upon him.   First, that argument denigrates the work of police officers who speak on a daily basis with members of the neighborhoods they work in to, among other things, establish or maintain community relationships, inquire as to neighborhood issues, and provide information regarding public safety.   And secondly, regardless of whether or not the defendant decides to testify, the defense may argue through cross-examination, direct evidence, or in its closing argument that it was a reasonable response for the defendant to run from the police.

Without an adequate summary of the previous interactions this defendant has had with the same officer he encountered on January 25th, the jury will have been presented an incomplete and misleading version of events.

In the alternative, this motion should be deferred until the Court has heard the defendant's cross-examination of the government's witnesses, and any direct evidence offered by the defense.  *See United States v. Griffin*, 818 F.2d 97, 104 (1st Cir. 1987).

## CONCLUSION

The government believes its proposed limited line of questioning described above draws an appropriate balance between providing the jury with a complete picture with which to determine whether or not the defendant's flight from the police was reasonable, and not prejudicing the jury or being unfair to the defendant.   Accordingly, the motion in limine should be allowed and the government should be permitted to inquire as proposed above.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Dated: November 26, 2018                BY:      /s/ Nicholas Soivilien
                                                Nicholas Soivilien
                                                Alexia R. De Vincentis
                                                Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Nicholas Soivilien
Nicholas Soivilien